UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EDMUND SCARBOROUGH, et al** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) Civil Action No. 05-1427 (RBW) |
| | ) |
| **FRANCIS J. HARVEY** | ) |
| **Secretary of the Army, et al** | ) |
| | ) |
| **Defendants.** | ) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY
JUDGMENT**

Defendants file this Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Partial Summary Judgment. Defendants request this Court grant its motion to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Alternatively, Defendants request this Court grant partial summary judgment in their favor because there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

I.  **Plaintiffs Lack Standing To Challenge Alleged Privacy Act Violations**

Plaintiffs' complaint alleges the Army and Small Business Administration have committed violations of the Privacy Act which have caused Plaintiffs harm. However, the harm which Plaintiffs complain about is harm to their business or commercial interest and not harm to the Plaintiffs individually. Although listed individually as Plaintiffs, each Plaintiffs' information was not information about them individually, but about their commercial interests.

An individual has no standing to challenge agency action with regard to records pertaining to a business, including a sole proprietorship. OMB Guidelines, 40 Fed. Reg. At 28,951; St. Michael's Convalescent Hospital v. California, 643 F.2d 1369, 1373 (9th Cir. 1981) (stating that "sole proprietorships are not individuals and thus, lack standing to raise a claim under the Privacy Act"). Plaintiffs' claims fall outside the scope of the Privacy Act because even assuming all of Plaintiffs' allegations are true, each Count in the Amended Complaint is premised on the alleged disclosure of entrepreneurial information, rather than personal information.

The Privacy Act is designed to protect against individual harms as a result of an agency's inappropriate use of information systems. The harms that Plaintiffs complain of are not individual in nature, but commercial or entrepreneurial. Plaintiffs Scarborough, Wright, and Gowen were involved in writing, proposing, and marketing bonds for Army, Navy, and Air Force contracts. Hamblen Decl. ¶ 4. These endeavors were commercial in nature, not personal. The information gathered pursuant to the Army's Criminal Investigation Command (CID) investigation pertained to the actions of the Plaintiffs in their commercial or entrepreneurial capacity. Thus, any information disclosed pertained solely to the commercial aspect of Plaintiffs' dealings with the government.

Contrary to Plaintiff's assertions that the House Bill is more important in deciphering the legislative history of the Privacy Act, this Court has found that the Senate's definition of record "'was adopted to more closely reflect the definition of 'personal information' as used in the Senate bill.'" Houston v. United States Department of Treasury, 494 F. Supp. 24, 28 (D.D.C. 1979) (citing Legislative History of the Privacy Act of 1974, Source Book on Privacy, Senate

Comm. on Gov't Operations & House of Representatives Comm. on Gov't Operations (1976) (hereinafter Source Book) at 993-94).  The definition of "personal information" in the Senate bill refers to information about an individual, which excludes information about "proprietorships, businesses, and corporations." S.Rep.1183, 93d Cong., 2d Sess. 79 (1974).  Therefore, this Court should find that the legislative history of the Privacy Act does intend to distinguish between personal information and non-personal information.

In Houston, an IRS agent alleged that the IRS violated the Privacy Act by failing to give the agent written notice that certain information concerning his case assignments were placed in his personnel file and later used against him in an adverse personnel action. Id. at 25.  The information, in the form of notes, recorded "the substance of conversations between [the IRS agent] and his supervisors concerning four tax audits", including when the agent could complete the audits, the status of the audits the agent was performing, the agent's calculation of depreciation and bad debt reserves, the hours the agent expended on certain audits, and the agent's identification of the issues involved in the audits. Id. at 26.  The Court granted summary judgment in favor of the defendants because the "information transmitted here relates directly to official government business.  Standing by itself, or otherwise, it reveals nothing about the plaintiff's private affairs so as to trigger the protective provisions of the Privacy Act." Id. at 28-29.

Houston further stated that, after reading the definition of record and the Committee staff analysis, "it is clear that the Act protects only 'personal' information, and while the language of the statute itself suggests that this definition should not be read too restrictively, it plainly does not encompass the type of information supplied by plaintiff to his supervisors, information which

plaintiff himself does not characterize as 'personal.'" Id. at 28.  Houston found a "clear indication that the Congress did not intend the Act to apply to all information in the Government's hands.  Rather, Congress sought to avoid indiscriminate circulation of sensitive information about an individual's private affairs among government agencies." Id. at 27.

Plaintiffs admit in their Complaint at paragraph 46 and again on page 14 of their Response that the information disclosed was about "both Plaintiffs' financial transactions in the surety bond arena."  Thus, the information was entrepreneurial in nature and was not Plaintiff's personal information.  Because the information contained in the CAN was purely entrepreneurial in nature, reflecting Plaintiff's actions in a business capacity, this Court should dismiss Plaintiff's Complaint for lack of standing.

The Privacy Act generally prohibits an agency from disclosing a record about an individual.  5 U.S.C. § 552a (b).  A record is defined as "any item, collection, or grouping of information that is maintained by an agency. . . " 5 U.S.C. § 552a (a)(4).  To establish a violation of the Privacy Act, a plaintiff must show that the information in question is covered by the Act as a "record" contained within a "system of records."  5 U.S.C. § 552a (b).  To qualify as a record the information must (1) contain the individual's name or other identifying particular and (2) be "about" the individual.  Tobey v. N.L.R.B., 40 F.3d 469, 471 (D.C. Cir. 1994).  "The fact that the information contains an individual's name does not mean that the information is 'about' the individual."  Id.

Henke v. Dep't of Commerce, No. 94-189, 1995 WL 904918, at *2 (D.D.C. May 26, 1995), vacated and remanded on other grounds, 83 F.3d 1453 (D.C. Cir. 1996) an unpublished opinion cited by plaintiff, found that the act granted an individual a right of access to records

"about the individual" even if found in a corporate record. The D.C. Circuit reversed finding that because the agency did not retrieve by the individual's name the records were not in a system of records. Unlike the records in <u>Henke</u>, the information in the CAN is not about the Plaintiffs. The information contained in the CAN is about the Plaintiffs' business entities (including individual sureties) and their business dealings with construction companies and the government. The CAN is entitled, Insurance Fraud - Bonding and Surety, and states at the opening, "The following individual and entities have been selling and advertising surety bonds to construction companies (several addresses have been identified for each individual and business)." The CAN lists the names of the three named Plaintiffs along with the name of their business entity and business address. The fact that information contains an individual's name does not mean that the information is about the individual. <u>Tobey</u>, 40 F.3d at 471. Despite the fact that the CAN contains the names of the individual Plaintiffs, it is not about the individuals, it is about their business pursuits.

II.     **Count II Should Be Dismissed Because Special Agent Hamblen Made No Disclosure To First Bank in Violation of the Privacy Act.**

In Count II of their Complaint, Plaintiffs allege that Special Agent Hamblen intentionally and/or willfully disclosed Privacy Act protected information by means of Hamblen's June 21, 2005 letter to First Bank. Special Agent Hamblen's letter to First Bank requested specific information from First Bank, whether any of the named Plaintiffs or their businesses had a relationship with First Bank. Special Agent Hamblen particularly sought confirmation that Plaintiff Gowen, and his business, First Mountain Bancorp, had an association with First Bank as Plaintiff Gowen had represented.

Plaintiffs have identified no Privacy Act protected information released in the letter or the irrevocable trust receipt, the First Mountain Bancorp letter, or the list of businesses and individuals attached to the letter.

> A record is any item, collection, or grouping of information about an individual that is maintained by an agency, including but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

5 U.S.C. § 552a(a)(4).

In requesting information from First Bank, Agent Hamblen revealed no records. Agent Hamblen merely provided the names of the individuals and businesses that had been made known to him in the course of his investigation. This was provided in an attempt to determine if First Bank had an association with any of the subjects of the investigation. He provided a letter from Mr. Gowen on First Mountain Bancorp letterhead (which references an affiliation with First Bank) and an irrevocable trust receipt (ITR) from Gowen and First Mountain Bancorp. Plaintiffs can hardly argue that release of the ITR and the letter from Plaintiff Gowen are protected by the Privacy Act when the documents were submitted by Plaintiff Gowen on a government contract and were part of a GAO protest. Hamblen Declaration, ¶ 7.

The list of names attached to Agent Hamblen's letter is also not a record. The list contains the names and businesses of Plaintiffs and states that the names on the list are currently being investigated by Agent Hamblen's office for fraudulent surety bonds. Nothing in the list of names and businesses contains any personal information about the Plaintiffs.

Agent Hamblen was conducting a law enforcement investigation as an investigator with the Army Criminal Investigation Command. In that capacity, he sent a request for information to

First Bank in Creve Coeur, Missouri.  Agent Hamblen is authorized to request financial information pursuant to Army Regulation 190-6, Obtaining Information From financial Institutions, while conducting an investigation.  To follow Plaintiffs' argument that Agent Hamblen disclosed Privacy Act protected information in his letter to First Bank would lead to the illogical conclusion that whenever an investigator identifies the name of an individual as being the subject of an investigation, that investigator violates the Privacy Act.  Such a result is surely not intended by the Privacy Act.   Special Agent Hamblen did not make any disclosures in violation of the Privacy Act and only revealed enough information to elicit a response from First Bank.  Agent Hamblen provided no record to First Bank as defined by the Privacy Act.  Neither the letter itself, nor its attachments contained any personal information about the Plaintiffs.

**III.     Counts III and IV Should Be Dismissed Because Mr. Greenway Did Not Disclose Privacy Act Protected Information.**

In their opposition brief, Plaintiffs argue that Mr. Greenway, by writing to Plaintiff Wright's counsel that Plaintiff Scarborough was "another convicted felon" and by referencing Wright and Scarborough's joint business activities, that Mr. Greenway improperly disclosed Privacy Act protected information.  Pl. Opp. P. 23.  Plaintiffs likewise argue that Mr. Greenway, in a letter to Plaintiff Scarborough's counsel improperly disclosed Privacy Act protected information by stating that Wright "was convicted of surety bond fraud in the early 1990's" and providing details of Scarborough's and Wright's financial and business transactions.  Pl. Opp. P. 23.

First, any business activities described in the letters about the business activities of Plaintiffs Scarborough and Wright were not about the individuals but about their business

dealings.  Second, their business dealings that are described in the letters to counsel for the other Plaintiff merely indicated that Scarborough and Wright had endeavored to conduct business with the government jointly.  Mr. Greenway's letter to Plaintiff Wright's counsel states that Mr. Wright and Mr. Scarborough "have jointly met with government officials in an effort to convince such officials to accept 'trust receipts' from First Mountain Bancorp as security for bonds on federal contracts."  Greenway Declaration, Enclosure 5.  In his letter to Plaintiff Scarborough's counsel, Mr. Greenway stated:

> Mr. Scarborough has proposed using assets of Underwriters Reinsurance Company, Limited, Mr. Wright's organization headquartered in the Caribbean, as security for bonds.  In addition, Mr. Wright and Mr. Scarborough have jointly met with government officials in an effort to convince such officials to accept trust receipts from First Mountain Bancorp as security for bonds on federal contracts.
>
> Greenway Declaration, Enclosure 4.

Thus, the extent to which Mr. Greenway revealed financial information about Scarborough and Wright to the counsel of the other, consisted merely of disclosing the fact that the two Plaintiffs had jointly sought to do business with the government.  This information can hardly be said to be a secret and clearly does not invoke any of the protections of the Privacy Act.

With regard to the information in Mr. Greenway's letters referring to Plaintiffs Scarborough and Wright as convicted felons, this information is not protected by the Privacy Act for two reasons.  First, there is no right to Privacy in one's criminal record.  Criminal records are public matters.  Paul v. Davis, 424 U.S. 693, 695-6 (1976).  Mr. Greenway states in his declaration that the information concerning the convictions of Plaintiffs Scarborough and Wright was gained through public records.  Greenway Declaration, ¶ 11.  Mr. Greenway was able to access this information using his LEXIS-NEXIS account.  The D.C. Circuit has held that when a

release consists merely of information to which the general public already has access, or which the recipient of the release already knows, the Privacy Act is not violated. Hollis v. U.S. Dep't of Army, 856 F.2d 1541, 1545 (D.C. Cir. 1988)

The second reason why the statement in Mr. Greenway's letters referring to Plaintiffs as convicted felons is not protected by the Privacy Act is that this information did not come from a system of records. The Privacy Act defines system of records as, "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned tot he individual." 5 U.S.C. § 552a(a)(5). The LEXIS-NEXIS database from which Mr. Greenway obtained the criminal history of the two Plaintiffs is not maintained by the agency and is not under the agency's control. Therefore, it is not a system of records. Since the information regarding Plaintiffs' criminal convictions is publicly available and not maintained in an agency system of records, Mr. Greenway's mention of the Plaintiffs' criminal history in letters to counsel is not a violation of the Privacy Act.

**IV. Contracting Officials have a Need to Know the Information in the CAN**

Agent Hamblen had reason to believe that Plaintiffs were involved in issuing fraudulent bonds on Department of the Army contracts. Defendant's Exhibit 2, to Motion to Dismiss or in the alternative for partial summary judgment (DEX 2) ¶ 4. Agent Hamblen's investigation had revealed that these fraudulent bonds had been issued on numerous Army contracts, as well as contracts with the Department of the Air Force, Department of the Navy and other Federal Agencies outside the Department of Defense. DEX 2 ¶ 4. Agent Hamblen's release of the CAN to LTC Feck of the Defense Acquisition University (DAU) and DAUs subsequent

dissemination of the CAN to all procurement officials was pursuant to a need to know. Plaintiffs admit that Contracting Officers have a duty to ensure that contracts are adequately bonded. Pl. Opposition p. 33. Given the widespread nature of the fraud involved, dissemination of the CAN to all procurement officials was the only means available to ensure that these officials had the information necessary to fulfill this duty.

Criminal Investigation Command Regulation 195-5 governs the use of CANs. That regulation provides:

> The Criminal Alert Notice (CAN). The purpose of a CAN is to expedite the reporting of perishable information to organizations external to CID. A CAN will be used for the dissemination of crime related, time sensitive information such as serial crime, fraud schemes, bad checks and impersonators. One reason for the use of a CAN is to attack the offender's capability of victimizing others and to alert high-risk activities (such as exchanges, banks and hospitals) in an event to prevent them from being victimized by a given suspect.

CIDR 195-5 ¶ 18-15. As the above quoted passage shows the CAN was created for situations like the one faced by SA Hamblen. A fraud scheme is one of the specific uses cited for a CAN, undermining Plaintiff's argument that Army Regulation (AR) 27-40 requires the use of a different dissemination method. Additionally, CIDR 195-5 specifically contemplates using a CAN to alert potential victims, in this case contracting officials. Disclosure of the CAN to the contracting officials at DAU was consistent with the need to know exception to the Privacy Act. 5 U.S.C. § 552a(b)(1). The fact that the Army also has a procurement flash report for disseminating information about fraudulent activity does not effect the ability of the Army's Criminal Investigation Division to use a Criminal Alert Notice to notify potential victims of an on-going fraud scheme.

Similarly, the declarations from Fernando Guerra and Ann Montes establish that these

SBA employees had a need to know the information contained in the CAN. Plaintiff argues that Fernando Guerra does not claim a need to know the information. Pl. Opposition p. 41. However the Guerra declaration clearly establishes that he did have a need to know the information. Guerra forwarded the email that he received from Ann Montes to 8(a) Business Development (BD) Program participants. Declaration of Fernando Guerra; DEX 4. A BOS provides business development assistance to active 8(a) Business Development (BD) program participants. The section 8(a) BD program is a business development program designed to assist small businesses in the federal procurement area. Under SBA's Surety Bond Guarantee (SBG) Program, SBA, an 8(a) BD program participant, and a surety enter into an surety bond whereby the surety will pay another contractor to complete performance of the contract if the participant defaults. Id. If the bond is fraudulent, the 8(a) participant is not adequately protected. Id. Mr. Guerra clearly established that he had responsibility to assist (a) Business Development (BD) program participants including by helping those participants avoid fraudulent bonds.

**V. The Notice Requirement of the Routine Use Provision Only Applies When the Government Is Seeking Information from an Individual**

Plaintiff's site to United States Postal Serv. v. National Ass'n of Letter Carriers, 9 F.3d 138, 146 (D.C. Cir. 1993) as requiring a third element for application of the routine use exception to the Privacy Act. Pl. Opposition p. 41. The Court there stated "[i]t will be recalled that the Privacy Act mandates that each employee receive actual notice of the routine uses to which private information **provided by the employee is put**." United States Postal Serv. v. National Ass'n of Letter Carriers, 9 F.3d 138, 146 (D.C. Cir. 1993) (emphasis added). The information gathered in the CAN was not provided by Plaintiff but instead was gathered in the course of a

11

criminal investigation.  Obviously a law enforcement official cannot provide actual notice to a suspected criminal of the routine uses to which the gathered information may be put.

**VI. Disclosure of the Can to SBA Was Compatible with the Published Routine Use Notice**

Plaintiff argues that Britt v. Naval Investigative Service, 886 F.2d 544, 547-50 (3d Cir. 1989) supports Plaintiff's position.  In Britt, the Third Circuit noted "[t]he statutory requirement of compatibility, however, requires instead a dual inquiry into the purpose for the collection of the record in the specific case and the purpose of the disclosure.  Britt v. Naval Investigative Service, 886 F.2d 544, 548-549 (3d Cir. 1989).  In that case, because information was gathered to investigate one particular crime for possible prosecution release to Britt's civilian employer, a government agency, was not proper.  The Court determined that it is undisputed that the investigation was for a specific instance of possible wrongdoing rather than for a general inquiry into Britt's background. Id. at 549.

In contrast, SA Hamblen was conducting an investigation into a wide ranging, and on-going fraud scheme.  DEX 2 ¶ 4.  Agent Hamblen's two purposes in drafting the CAN were: (1) to warn Department of Defense (DoD) contracting officials of the possible fraudulent activity of the individual sureties; and (2) to collect information that would be useful to the investigation. DEX 2 ¶ 5.  Both of those uses are compatible with the purposes of the investigation, protecting the government from future fraud, and possible prosecution of the perpetrators. Release to the SBA serves both those functions.

The Court in Britt, also endorsed a disclosure similar to CID's disclosure of the CAN to DAU.  The Court stated:

> [t]he disclosure to the CO is no longer challenged and, in any event, such

>  disclosure would appear to fall within the "right to know" provision governing
>  intra-agency transmission of information, see 5 U.S.C. § 552a(b)(1), since the
>  Reserves might need to reevaluate Britt's access to sensitive information or the
>  level of responsibility he was accorded.

Britt v. Naval Investigative Service, 886 F.2d 544, 549 (3d Cir. 1989). Similarly in this case, the procurement officials at DAU needed the information in the CAN to evaluate Plaintiff's ongoing practice of furnishing surety bonds backed by fraudulent or nonexistent assets. DEX 2 ¶ 4.

**VII. Defendants Have Shown That Policies and Procedures Were in Place at Both Agencies To Satisfy the Privacy Act.**

Regarding §(e)(6), SBA has made reasonable efforts to ensure that its records are accurate, complete, timely, and relevant through the promulgation of regulations and an SOP. Although there is a duty to maintain agency records with sufficient accuracy, the mere presence of inaccurate information in a record is not an automatic violation of the Privacy Act. White v. Office of Personnel Management, 787 F.2d 660, 662 (D.C. Cir. 1986), cert. denied, 479 U.S. 885 (1986). Indeed, the judgments and evaluation of the Army's investigation were properly retained in the record. White, 787 F.2d at 662; Velikonja v. Mueller, III, 362 F. Supp.2d 1, 16 (D.D.C. 2004) (citing Kleiman v. Department of Energy, 956 F.2d 335, 337-38 (D.C. Cir. 1992)) ("the Act, however, is intended to remedy 'factual or historical errors,' and is not a vehicle for addressing 'the judgments of federal officials . . . reflected in records maintained by federal agencies.'").

Regarding §(e)(9), SBA's promulgation of 13 C.F.R. §§ 102.20 through 102.61 are sufficient to establish rules of conduct for persons involved in the design, development, operation or maintenance of a system of records. As public documents, SBA employees are aware of the

Privacy Act requirements. Similarly, Army Regulation 340-21, The Army Privacy Program, also found at 32 C.F.R. 505.1, sets forth the policies and procedures governing personal information in Department of the Army (DA) systems of records. Further, the Army Criminal Investigation Command requires its personnel to thoroughly document investigative information, to maintain case folders in the personal custody of CID special agents or within the files system of the CID office, and each special agent and supervisor must ensure that personal data is entered into the database correctly. DEX 5 ¶ 15.

Finally, regarding §(e)(10), SBA's promulgation of 13 C.F.R. §§ 102.21, 102.22, 102.27 and SBA's SOP 40.04.03 demonstrate that SBA established the appropriate safeguards. Similarly Army policy is to safeguard personal information to prevent unauthorized use, access, disclosure, alteration, or destruction. 32 C.F.R. 505.1(e)(4). The Army Privacy Program further requires that an official be designated at each location and for each system of records to safeguard information in that system. 32 C.F.R. 505.4(d)(2). Resident Agent in Charge Gressley, PFRA, is the official who has been designated as the person responsible for safeguarding information at the PFRA. DEX 2 ¶ 9.

For plaintiffs to prevail on Counts VIII, IX, XIV, XV, and XVI, the plaintiffs bear the burden of proving that the agency either committed the act without grounds for believing it to be lawful or flagrantly disregarded his rights under the Privacy Act. 5 U.S.C. §552a(g)(4); <u>Laningham v. United States Navy</u>, 813 F.2d 1236, 1242 (D.C.Cir.1987); <u>Albright v. United States</u>, 732 F.2d 181, 189 (D.C.Cir.1984). As evidenced by the declarations and Army's and SBA's regulations and SOPs, there was no flagrant disregard for the Privacy Act requirements in §§ (e)(6), (9), and (10). Accordingly, this Court should enter summary judgment in favor of

Defendants on Counts VIII, IX, XIV, XV, and XVI.

## CONCLUSION

For the foregoing reasons and those stated in our Motion to Dismiss or in the Alternative for Partial Summary Judgment, Defendants respectfully request that this Court dismiss plaintiffs' amended complaint with prejudice.

Respectfully submitted,

\_\_\_/s/_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney


\_\_\_/s/_____
RUDOLPH CONTRERAS D.C. Bar No. 434122
Assistant United States Attorney


\_\_\_/s/_____
KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 353-9895

Of Counsel:
Major Patrick Gary
U.S. Army Legal Services Agency
901 North Stuart Street

15

Arlington, Virginia  22203-1837

Erika Covarrubias
Office of General Counsel
U.S. Small Business Administration
Washington, DC
(202) 205-6647