# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        )
EDMUND C. SCARBOROUGH, et al.,          )
                                        )
            Plaintiffs,                 )
                                        )
      v.                                )        Civil Action No. 05-1427 (RBW)
                                        )
FRANCIS J. HARVEY,                      )
Secretary of the Army, et al.,          )
                                        )
            Defendants.                 )
                                        )
_____)


# REDACTED MEMORANDUM OPINION[1]

Edmund Scarborough, Larry Wright, and George Gowen ("the plaintiffs") bring this

action against the United States Department of the Army ("Army"), the United States

Department of Defense ("DOD"), and the United States Small Business Administration ("SBA")

(collectively "the defendants"), seeking actual and compensatory damages as well as attorneys'

fees and costs for multiple alleged violations of the Privacy Act, 5 U.S.C. § 552a et seq. (2000),

in connection with an Army investigation into the issuance of possibly fraudulent surety bonds to

the United States government by a number of individuals and entities, including the plaintiffs.

Amended Complaint ("Compl.") at 1; see also id. ¶¶ 12-13, 87-213.  Currently before the Court

---

[1]  This Memorandum Opinion was originally issued on May 22, 2007.  It has now been partially redacted upon the joint motion of the parties.  However, the Court has redacted only that information that could conceivably be considered protected by the Privacy Act.  It is the Court's view that it is inappropriate to redact (1) any information that was already in the public domain by way of one of the unsealed filings in this case; or (2) any information that is necessary for a full articulation of this Court's legal holding.  An unredacted version of this Memorandum Opinion will again be made available to the public only at such time as it deems that the redactions are no longer necessary.

is the defendants' motion to dismiss the plaintiff's complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) or, in the alternative, for partial summary judgment pursuant to Federal Rule

of Civil Procedure 56(c) ("Defs.' Mot.").[2]  Also before the Court is the plaintiffs' motion for

discovery pursuant to Federal Rule of Civil Procedure 56(f) ("Pls.' Mot.").[3]  For the reasons set

forth below, the Court denies the defendants' motion to dismiss, denies without prejudice the

defendants' motion for partial summary judgment, and grants the plaintiffs' motion for Rule

56(f) discovery.

## I. Factual Background

The plaintiffs allege the following facts in support of their complaint.  Plaintiff

Scarborough "is an individual surety providing surety bonds to contractors performing

commercial and government construction contracts."  Compl. ¶ 1.[4]  He also serves as Co-Chief

---

[2]  The following papers have been submitted in connection with this motion:  (1) Memorandum in Support of Defendants' Motion to Dismiss or in the Alternative for Partial Summary Judgment ("Defs.' Mem."); (2) Plaintiffs' Revised Opposition to Defendants' Motion to Dismiss or for Partial Summary Judgment ("Pls.' Opp."); (3) Defendants' Reply to Plaintiffs' Opposition to Motion to Dismiss or in the Alternative for Partial Summary Judgment ("Defs.' Reply"); (4) Defendants' Statement of Material Facts to Which There Is No Genuine Dispute ("Defs.' Stmt."); and (5) Plaintiffs' Responses and Opposition to Defendants' Statement of Material Facts to Which There Is No Genuine Dispute ("Pls.' Resp.").

The defendants also move to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Defs.' Mot. at 1; Defs.' Mem. at 9.  Despite this representation, however, the Court agrees with the plaintiffs that the defendants "do not challenge the Court's jurisdiction on either facial or factual grounds."  Pls.' Opp. at 2.  Furthermore, it is evident that the plaintiffs have properly alleged jurisdiction pursuant to 5 U.S.C. § 552a(g).  Compl. ¶ 7; see also 5 U.S.C. § 552a(g) (vesting federal district courts with jurisdiction over alleged violations of the Privacy Act).  Accordingly, the Court denies the defendant's motion to dismiss pursuant to Rule 12(b)(1).

[3]  The defendants did not file an opposition to the plaintiff's Rule 56(f) motion.

[4]  In considering the defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court "must treat the complaint's factual allegations as true."  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks and citations omitted).  Moreover, "[i]n deciding whether there is a genuine issue of material fact [precluding a grant of summary judgment pursuant to Rule 56(c)], the [C]ourt must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record."  Dist. Intown Props. Ltd. P'ship v. District of Columbia, 198 F.3d 874, 878 (D.C. Cir. 1999) (citation omitted).  The plaintiffs' factual allegations are undisputed except where noted by the Court.  In addition, because the plaintiffs contend "that

(continued...)

2

Executive Officer of International Bonding & Construction, Inc. ("ICBS"), which "is in the business of providing a variety of bonding and construction administration/consulting services to Scarborough and other individuals and entities." Id. Plaintiff Wright is the president of The Underwriters Group ("Underwriters"), and is "engaged in the business of risk underwriting for business, construction[,] and financial institutions." Id. ¶ 2. Plaintiff Gowen is the president of First Mountain Bancorp ("FMB"), which is "engaged . . . in the business of serving as trustee for investors." Id. ¶ 3. The plaintiffs work together "in the individual surety and collateral businesses." Id. ¶ 13. Specifically, Scarborough serves "as an individual surety on bid, payment and performance bonds given to various agencies of the United States [g]overnment . . . and to private owners and contractors," Wright "locates monies to guarantee investors against losses," and Gowen "gathers assets to back and/or guaranty [sic] the individual surety bonds, and acts as trustee of assets backing the same." Id. ¶ 9.

In 2004, Special Agent Christopher Hamblen of the Army's Criminal Investigation Division ("CID") commenced an investigation into the allegedly fraudulent issuance of individual surety bonds to the United States government.[5] Id. ¶ 12; see also Defs.' Mot., Exhibit

---

[4](...continued)
discovery is likely to reveal triable issues of material fact in every Count for which [the] [d]efendants seek summary judgment," Pls.' Mot., Exhibit ("Ex.") 2, Affidavit of Geoffrey T. Keating ("Keating Affidavit") ¶ 7, the Court will also note all areas in which the factual record is allegedly undeveloped.

In addition, the Court notes that some discussion of the information disclosed by the defendants and allegedly protected by the Privacy Act was necessary and unavoidable in this Memorandum Opinion in order to fully and fairly evaluate the arguments made by both sides. Nevertheless, the Court has sought to minimize its references to the particular information disclosed.

[5] Hamblen is a Special Agent at the Phoenix Fraud Resident Agency for the Major Fraud Procurement Unit of the CID in Phoenix, Arizona. Defs.' Mot., Ex. 2 (Declaration of Christopher C. Hamblen) ("Hamblen Decl.") ¶ 2. In this capacity, he is "responsible for conducting criminal investigations[] wherein the . . . Army has an interest," including "major procurement fraud investigations" such as those connected to the issuance of false surety bonds. Id.

("Ex.") 2 (Declaration of Christopher C. Hamblen) ("Hamblen Decl.") ¶¶ 2-5.  This investigation

centered on an individual named Robert Joe Hanson, but also encompassed several other

individuals and entities, including the three plaintiffs and their respective businesses.  Compl. ¶¶

12-13; Hamblen Decl. ¶¶ 3-4.  [ELEVEN LINES REDACTED]

     *A. The Dissemination of the Criminal Alert Notice*

     In connection with the above investigation, Hamblen created and issued Criminal Alert

Notice No. 0006-04-CID274 ("the CAN") in March 2005.[6]  Compl. ¶ 15; see Defs.' Mot., Ex. 1

(Criminal Alert Notice) at 1-3; see also Hamblen Decl. ¶ 5 (stating that the CAN "describ[ed] the

subjects' activities regarding bonds on DOD contracts" and was issued "to warn [DOD] officials

of the possible fraudulent activity of the individual sureties and . . . to collect information that

would be useful to the investigation").  The CAN, which is subtitled "Insurance Fraud – Bonding

and Surety" and "conspicuously marked 'FOR OFFICIAL USE ONLY' at the top and bottom of

each page," Compl. ¶¶ 26-27; see Criminal Alert Notice at 1-3, identifies the plaintiffs and their

businesses, among other individuals and entities, as selling and advertising surety bonds for

which the "specific marketable assets that are pledged as collateral to guarantee the performance

of a bond obligation . . . [did] not meet the definition of acceptable assets" required by Federal

---

[6] Criminal Investigation Division Regulation 195-5 states that

    [t]he purpose of a CAN is to expedite the reporting of perishable information to organizations external
    to CID.  A CAN will be used for the dissemination of crime-related, time-sensitive information such
    as serial crime, fraud schemes, bad checks, and impersonators.  One reason for the use of a CAN is
    to attack the offenders capability of victimizing others and to alert high-risk activities (such as
    exchanges, banks[,] and hospitals) in an event to prevent them from being victimized by a given
    suspect.

Defs.' Reply at 10 (quoting CIDR 195-5 ¶ 18-15) (internal quotation marks omitted); see also Compl. ¶ 17 (same).

Acquisition Regulation ("FAR") 28.203-2, Compl. ¶¶ 10, 14.[7]  [TWO LINES REDACTED]  The

CAN further requests that any recipients who "have contracts with any of the [named] personnel

or entities as the bonding company" should contact Hamblen at the CID.[8]  Criminal Alert Notice

at 3.  The plaintiffs allege that the CAN contains "personal and confidential information about

[them] including, but not limited to, [their] name[s], financial history, associations,

entrepreneurial activities, business interests[,] and business addresses."[9]  Compl. ¶¶ 30-32.  The

plaintiffs also allege that the CAN falsely implicates them in "the alleged fraudulent and criminal

activities of Hanson," id. ¶ 28, and that "[m]uch of the information about [them] in . . . [the]

CAN is inaccurate, misleading, or false, and in no way relates to their current businesses or

Plaintiff Scarborough's issuance of individual surety bonds[] or has any relationship to any

matter being investigated [by the CID]," id. ¶ 33.

---

[7]  According to the plaintiffs, Army regulations state that "the 'For Official Use Only' . . . designation is reserved for information that has not been given a security classification but which may be withheld from the public because disclosure would cause a foreseeable harm to an interest protected by one or more [FOIA] exemptions." Compl. ¶ 25; see also 32 C.F.R. § 295, App. A(I)(A) (2007) (discussing "For Official Use Only" designation).

[8]  Hamblen states that "numerous government agencies contacted [his] office to notify [the CID] of information and/or documents on the individuals and businesses listed in the CAN" following the CAN's release, Hamblen Decl. ¶ 6; see also Defs.' Stmt. ¶ 10 (same), although he does not clarify whether those agencies provided information or documents specifically regarding the plaintiffs or their respective businesses, see Pls.' Resp. at 6.

[9]  Specifically, the CAN mentions the plaintiffs and their businesses in the following ways: First, it identifies them as among those "individuals and entities [who] have been selling and advertising surety bonds to construction companies."  Criminal Alert Notice at 1.  Second, it provides the business address (although no telephone number) for each of the plaintiffs' businesses and states each plaintiff's relationship to his respective business.  Id. at 1-2.  [TWO LINES REDACTED]  Fourth, it states that Hanson and plaintiff Scarborough together "attempted to submit bonds on a request for proposal" by the United States Army Corps of Engineers.  Id. at 2-3. Scarborough ostensibly "used [UG] as the irrevocable credit pledge[,] . . . used [his business, ICBS,] when submitting the [UG] Certificate of Financial Guarantee to the government, . . . [and then] proposed to submit a trust receipt drawn on [plaintiff Gowen's business, FMB], instead of using [UG] as his assets."  Id.  Fifth, the CAN states that Gowen "signed his name as a trustee officer for FMB" on a second trust receipt submitted by Scarborough to the Army Corps of Engineers.  Id. at 3.  Sixth, it states that Hamblen's investigation established that UG was incorporated in February 2000 in the Virgin Islands and that it "had attached its assignment trust assets from Bellwether Trust Company, owned by Mr. Gowen."  Id.  [TWO LINES REDACTED]

Following its creation, the CAN was purportedly disseminated to a number of different individuals and organizations both within and outside of the federal government.[10]  Compl. ¶¶ 37-67 (recounting all of the alleged disclosures of the CAN).  First, the plaintiffs allege that Hamblen disseminated the CAN to the National Association of Surety Bond Producers ("NASBP"), "an international organization of professional surety bond producers and brokers," in late March 2005.[11]  Id. ¶ 37.  An article reproducing the text of the CAN was subsequently published in the April/May 2005 edition of the NASBP newsletter, available in both hard copy and electronic form to the organization's 5,000 members.  Id. ¶¶ 38-39.

Next, the plaintiffs allege that on March 23, 2005, Hamblen sent the CAN by e-mail to Lieutenant Colonel Vincent Feck of the United States Air Force, "with a request that Lt. Col. Feck disseminate the CAN to all DoD contracting [o]ffices."[12]  Id. ¶ 44 (internal quotation marks omitted); see also Hamblen Decl. ¶ 6 (stating that he "forwarded the CAN to [Feck] . . . [because] due to his position, [he] would be the best person to disseminate the CAN to DoD contracting officials"); Defs.' Mot., Ex. 6 (Declaration of Vincent J. Feck) ("Feck Decl.") ¶ 3 (stating that he received the CAN from Hamblen in March 2005).  Feck then sent copies of the CAN by e-mail to all "senior procurement executives and their staffs in the [m]ilitary departments (the Departments of the Air Force, Army, and Navy) and the [d]efense [a]gencies,"

---

[10]  The CAN directs recipients to disseminate it "immediately to all DoD contracting offices."  Criminal Alert Notice at 1, 3.

[11]  Hamblen denies disseminating the CAN to the NASBP.  Hamblen Decl. ¶ 6.

[12]  Feck is the Director of Operations, Defense Procurement & Acquisition Policy, for the Office of the Under Secretary of Defense (Acquisition, Technology, and Logistics).  Defs.' Mot., Ex. 6 (Declaration of Vincent J. Feck) ("Feck Decl.") ¶ 1.  He is responsible, inter alia, "for overseeing the execution of Defense Procurement and Acquisition Policy operations" as well as "Directorate communication and outreach with the Defense procurement field activities/offices and with industry concerning Department of Defense procurement and acquisition policies and procedures."  Id.

including the Defense Acquisition University ("DAU"), an agency of the DOD.  Feck Decl. ¶ 3;

see also Compl. ¶¶ 41, 43 (alleging dissemination of the CAN to the DAU and "to all DoD

contracting offices").  In addition, Feck e-mailed the CAN "to the General Services

Administration, [the] National Aeronautics and Space Administration[,] and the National

Security Agency, all of which are outside the Defense Department, to share the information

contained in the [CAN] with those organizations."  Feck Decl. ¶ 3.

Finally, the plaintiffs allege that the individuals and agencies to whom Feck disclosed the

CAN themselves disseminated it to various public and private entities.  Compl. ¶¶ 55-67.

Specifically, according to the plaintiffs, the DAU published a copy of the CAN on its public

website in April 2005, where it was "accessed and viewed over 150 times by [I]nternet users."[13]

Id. ¶ 57.  The plaintiffs also allege that on April 1, 2005, Mary Urey, a DOD employee who had

indirectly received the CAN from Feck, sent a copy of the CAN by e-mail to, inter alia, Ann

Montes, a Procurement Center Representative for the SBA.[14]  Id. ¶¶ 60-63; see also Defs.' Mot.,

Ex. 3 (Declaration of Ann H. Montes) ("Montes Decl.") ¶ 3 (stating that "[i]n April of 2005,

[she] received an unsolicited e-mail from Mary Urey, a [DOD] employee, regarding a [DOD]

investigation into sureties submitting false bonds").  On April 4, 2005, Montes "forwarded the

[CAN] to several Business Opportunity Specialists . . . at the local SBA San Antonio District

Office, including Fernando Guerra."  Montes Decl. ¶ 4; see also Compl. ¶ 65 (alleging that

---

[13]  The plaintiffs further state that the CAN was quickly removed from the publicly available area of the
DAU website once the plaintiffs notified the DAU of the document's allegedly unauthorized disclosure.  Compl. ¶¶
58-59.

[14]  According to Montes, her responsibilities as a Procurement Center Representative include "increasing
the small business share of federal procurement awards by initiating small business set-asides, reserving
procurements for competition among small business firms, providing small business sources to federal buying
activities, and counseling small firms."  Defs.' Mot., Ex. 3 (Declaration of Ann H. Montes) ("Montes Decl.") ¶ 2.

Montes disseminated CAN to Guerra); Defs.' Mot., Ex. 4 (Declaration of Fernando J. Guerra) ("Guerra Decl.") ¶ 3.  The plaintiffs then allege that on April 5, 2005, Guerra "disclosed and disseminated the CAN via e-mail to private contractors, [the] [p]laintiffs' competitors, and other unauthorized persons."  Compl. ¶ 66; see also Guerra Decl. ¶ 4.

### B.  The May 2005 letters from Curtis Greenway

Following the issuance of the CAN, plaintiffs Wright and Scarborough, through separate attorneys, sent several communications to the CID seeking, inter alia, further information regarding Hamblen's investigation and all policies relating to CANs and their use, requesting retraction and correction of the factual inaccuracies and personal disclosures allegedly contained in the CAN, protesting the CAN's dissemination, and arguing that the trust receipts referred to in the CAN were valid security interests under the relevant federal regulations.[15]  Compl. ¶¶ 68-73; see also Defs.' Mot., Ex. 5 (Declaration of Curtis L. Greenway) ("Greenway Decl.") ¶¶ 3-5.  In two such communications on April 20 and April 21, 2005, Scarborough and Wright, through their attorneys, sent separate letters to CID attorney Curtis Greenway expressing their concerns. Compl. ¶¶ 71, 73; see also Greenway Decl. ¶¶ 4-5.  Greenway responded to Wright's attorney in a letter dated May 6, 2005, and to Scarborough's attorney in a letter dated May 16, 2005.[16] Compl. ¶¶ 74, 76-77, 79-80; see also Greenway Decl. ¶¶ 9, 13-14.  In these letters, Greenway

---

[15]  Scarborough and Wright are represented by separate attorneys employed by the same law firm.  See Defs.' Mot. at 26; Pls.' Opp. at 19.  The parties disagree as to whether "the letters to CID command . . . distinguish the fact that separate attorneys represent separate clients in this matter."  Defs.' Mot. at 26; see also id. (contending that "both counsel indicated that the law firm [as a whole] represented the individual [p]laintiffs and did not distinguish [or] make clear that the individual [p]laintiffs were represented by separate counsel"); Pls.' Opp. at 19 (arguing that the letters in question "leave no doubt that [p]laintiffs Scarborough and Wright had separate representation by two different attorneys").

[16]  Greenway initially responded to Scarborough's April 20, 2005 letter with a letter dated April 25, 2005, Compl. ¶ 74; Greenway Decl. ¶ 9, to which Scarborough's attorney responded on May 4, 2005, Compl. ¶ 75; Greenway Decl. ¶ 10.

articulated the basis for his belief, formed after an independent review of the circumstances surrounding the Hamblen investigation, "that the investigation of the [p]laintiffs . . . was appropriate."[17]  Greenway Decl. ¶ 11; see also Compl. ¶¶ 76, 79.  The plaintiffs allege that in doing this, Greenway "revealed confidential, sensitive and Privacy Act protected information about [p]laintiff Scarborough to [p]laintiff Wright and counsel for [p]laintiff Wright," Compl. ¶ 77, and "about [p]laintiff Wright to [p]laintiff Scarborough and counsel for [p]laintiff Scarborough," id. ¶ 80.  See Pls.' Opp., Exs. 10 (May 6, 2005 letter from Curtis Greenway to Geoffrey Keating) ("Keating Letter"), 12 (May 14, 2005 letter from Curtis Greenway to Lawrence Schor) ("Schor Letter").  Specifically, Greenway's letter to Wright's counsel states, albeit in a parenthetical comment, that [ONE LINE REDACTED], Keating Letter at 1, and Greenway's letter to Scarborough states that [ONE LINE REDACTED], Schor Letter at 2.[18]

     *C.  The June 21, 2005 letter to First Bank*

The plaintiffs also allege that Special Agent Hamblen disclosed "Privacy Act protected information" in a letter to the Fraud Prevention/Investigation Division of First Bank in Creve

---

[17]  Greenway represents that before composing his May 2005 letters, he undertook an independent review of, inter alia, "the instances Special Agent Hamblen had discovered in which [p]laintiffs Scarborough and Wright had been involved in [the] bonding of Defense Department contracts," Greenway Decl. ¶ 6, and concluded "that there were a number of indications of fraud in [p]laintiffs Scarborough[] and Wright's bonding activities," id. ¶ 11. See also id. ¶¶ 6-8, 11 (describing the scope of Greenway's review).   The plaintiffs state that they are in need of "discovery pursuant to which they can establish the exact role Mr. Greenway played in this situation, when he was first involved, the extent to which he was involved, [and] what he was purportedly asked to do by his superiors or peers."  Pls.' Resp. at 10.

[18]  In addition, Greenway's letter to Wright's attorney goes into great detail regarding [TWO LINES REDACTED], Keating Letter at 2, while Greenway's letter to Scarborough's attorney describes at length [ONE LINE REDACTED], Schor Letter at 3.

Coeur, Missouri, on June 21, 2005.[19]  Compl. ¶ 101; see id. ¶¶ 45-51; see also Hamblen Decl. ¶

7; Defs.' Mot., Ex. 9 (June 21, 2005 letter from Christopher Hamblen to Chris Troublstead)

("First Bank Letter").  In this letter, which is entitled "Request for Authentication/Information,"

Hamblen stated that the CID "is currently conducting an investigation [into] fraudulent surety

bonds . . . submitted on [United States] Government construction contracts. . . .  This

investigation has established/revealed [that] subjects of this ongoing investigation could be

associating themselves with the name of your organization/business 'FIRST BANK.'"  Compl. ¶

46 (quoting First Bank Letter at 1) (internal quotation marks omitted); see also First Bank Letter

at 1.  Hamblen further stated that he "would like to confirm/authenticate if [First Bank] has a

legal/authentic association with the identified business[es] and individuals. . . .  If [First Bank]

does not have a[n] association with the individual sureties, the bonds they have submitted to the

[United States] Government would be fraudulent."  Compl. ¶ 46 (quoting First Bank Letter at 1)

---

[19]  Hamblen's account of the circumstances giving rise to this letter is as follows:

On June 7, 2005, [he] received information that an individual surety had proposed a bid bond on a [United States] Department of Agriculture contract.  The surety had pledged an "irrevocable trust receipt" issued by [FMB] as security for the bond.  Plaintiff George Gowen had signed the trust receipt.  The bond was rejected and the contractor filed a bid protest with the Government Accountability Office (GAO).  The bid protest included a June 14, 2005 letter in which Plaintiff Gowen represented that the trust receipt was backed by stock held in escrow at First Bank in Creve Coeur, Missouri.  On June 21, 2005, [Hamblen] sent a letter to the [First Bank] Fraud Prevention/Investigation Division. . . . The purpose of [the] letter was to confirm whether or not Mr. Gowen had assets in First Bank. . . .  [I]f so, [Hamblen intended to] follow up with a request for a subpoena for [the relevant] records.  If First Bank did not have an association with Mr. Gowen, then that would indicate that Mr. Gowen [had] misrepresented the assets backing the [Department of Agriculture] bond.  If assets were misrepresented on bonds for the Department of Agriculture contract, misrepresentations may also have been [made] regarding bonds on Army contracts.  On June 23, 2005, [the CID] received a call from Mr. Al Powell [of First Bank], who confirmed he had an escrow agreement between a Maurice Furlong and Mr. Gowen/[FMB].

Hamblen Decl. ¶ 7.  The plaintiffs state that they "can neither agree nor disagree at this time" with Hamblen's above-referenced account "because there has been no discovery pursuant to which they . . . can confirm or dispute [his] statement[s]."  Pls.' Resp. at 7, 8, 9.

(internal quotation marks omitted); see also First Bank Letter at 1. Hamblen then provided a "list

of subjects (individuals and businesses) that are currently being investigated by [the CID] for

fraudulent surety bonds and the assets that back those bonds," including plaintiffs Wright,

Gowen, and Scarborough, and their businesses UG, FMB, and ICBS.[20] Compl. ¶ 50 (quoting

First Bank Letter at 2) (internal quotation marks omitted); see also id. ¶ 51 (contending that

"[t]he list also gratuitously names approximately 27 other individuals and/or entities that were

not named in the CAN and many of who[m] are not involved as part of, or related in any way to,

Plaintiff Scarborough's individual surety program"); First Bank Letter at 2. The plaintiffs allege

that after sending the letter, Hamblen telephoned Al Powell, Vice President of the Clayton,

Missouri branch of First Bank, to request additional information and access to financial records

regarding First Bank's relationship with the plaintiffs.[21] Compl. ¶ 52. The plaintiffs further

allege that as a result of this conversation, "First Bank refused to do one deal with Mr. Gowen

that would have allowed him to earn many millions of dollars per month for twelve months" and

then subsequently "terminated its relationship and contract with Mr. Gowen, forcing [him] to

find a new financial institution to maintain the escrow account containing approximately [540

million dollars]."[22] Id. ¶ 54.

---

[20] Hamblen also enclosed with the letter a June 14, 2005 communication from plaintiff Gowen to an Alabama corporation—presumably the protesting contractor referenced in Hamblen's declaration, see Hamblen Decl. ¶ 7—"[r]egarding [FMB's] Trust Receipt . . . for $860,000.00 where the Obligee is the [United States] Dep[artment] of Agriculture, Agricultural Research Service." First Bank Letter at 3. The communication states that the "irrevocable trust receipt" in question "is backed by 200 million shares of Preferred Stock in a Public Company which are being held in an escrow account at First Bank." Id.

[21] Hamblen denies initiating telephone contact with Powell. Hamblen Decl. ¶ 7 (stating that "on June 23, 2005, [the CID] received a call from Mr. Al Powell [of First Bank], who confirmed he had an escrow agreement between a Maurice Furlong and Mr. Gowen/[FMB]").

[22] The plaintiffs provide no support for this figure.

D.  *The Commencement of the Present Litigation*

The plaintiffs filed this action on July 20, 2005, alleging that the defendants' disclosure and dissemination of confidential and sensitive information concerning the plaintiffs in connection with Hamblen's investigation intentionally and willfully violated various provisions of the Privacy Act.  Original Complaint at 2.  As amended on December 7, 2005, the plaintiffs' complaint alleges that (1) the Army, the DOD, and the SBA violated 5 U.S.C. § 552a(b) by disclosing Privacy Act protected information to various entities through their dissemination of the CAN, Compl. ¶¶ 87-98, 127-143, 162-196 (Counts I, V-VI, and X-XIII); (2) the Army violated 5 U.S.C. § 552a(b) by disclosing Privacy Act protected information to First Bank through Hamblen's June 21, 2005 letter, id. ¶¶ 99-106 (Count II); (3) the Army violated 5 U.S.C. § 552a(b) by disclosing Privacy Act protected information to plaintiffs Scarborough and Wright and their respective attorneys through Greenway's May 2005 letters, id. ¶¶ 107-126 (Counts III-IV); and (4) the Army and the SBA violated 5 U.S.C. § 552a(e) by failing, inter alia, to ensure the accuracy, completeness, and security of their records about the plaintiffs, id. ¶¶ 144-161, 197-213 (Counts VII-IX and XIV-XVI).  The plaintiffs further claim that these allegedly intentional and willful violations of the Privacy Act caused them to "suffer[] actual damages, including . . . actual pecuniary damages and actual non-pecuniary damages in the form of direct and indirect injury to [their] reputations, loss of business, loss of future investment backed expectations, and extreme public embarrassment, humiliation[,] and mental anguish."  Id. ¶¶ 97, 105, 115, 125, 134, 143, 151, 156, 161, 170, 177, 187, 195, 203, 208, 213.

On March 6, 2006, the defendants moved to dismiss the amended complaint for failure to state a claim pursuant to Rule 12(b)(6).[23]  Defs.' Mot. at 1.  The defendants contend, inter alia, that dismissal is warranted because neither the CAN nor the letters to First Bank or the plaintiffs' attorneys contain any Privacy Act protected information.[24]  Defs.' Mem. at 13-19, 24-27. Specifically, the defendants argue that (1) the plaintiffs' claims regarding the CAN are "premised on the alleged disclosure of entrepreneurial information, rather than personal information," id. at 13-14; (2) the plaintiffs "have not identified the Privacy Act protected information allegedly disclosed [in the letter to First Bank]," id. at 24; and (3) "the information revealed in the two letters to counsel about the client of the other counsel . . . was available to the public," id. at 26. The defendants therefore argue that the documents at issue do not constitute "records" as that term is defined under the Privacy Act.[25]  Id.; see 5 U.S.C. § 552a(a)(4) (defining "record").

---

[23]  The defendants did not file an answer to the amended complaint.

[24]  The defendants also argue that (1) the plaintiffs' claims against the SBA should be dismissed because the CAN is not a record in the SBA's "system of records," as that term is defined in the Privacy Act, Defs.' Mem. at 19-23; and (2) the plaintiffs' claims concerning the dissemination of the CAN to the DAU and other DOD departments should be dismissed because those entities had a need to know the information contained within the CAN, and thus the dissemination falls within the "need to know" exception to the Privacy Act, id. at 27-28.  The Court concludes, however, that it must "look[] outside the complaint to factual matters" to evaluate the accuracy of these arguments. Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993) (citation omitted); see Defs.' Mem. at 23 (offering "declarations of . . . SBA employees [which purport to] make it clear that the CAN was never part of an SBA system of [r]ecords"), 28 (stating in conclusory fashion that "contracting officials within [the] DOD had a need to know the information contained in the CAN").  Accordingly, the Court "must convert [the] motion to dismiss [as to these arguments] into a motion for summary judgment."  Id. (citation omitted); see also Fed. R. Civ. P. 12(b); Flynn v. Tiede-Zoeller, 412 F. Supp. 2d 46, 50 (D.D.C. 2006) (stating that "[t]he decision to convert a motion to dismiss into a motion for summary judgment . . . is committed to the sound discretion of the trial court") (citation omitted).

[25]  The defendants incorrectly couch their argument that the CAN is not a record under the Privacy Act as one of legal standing.  See Defs.' Mem. at 13 (arguing that "[a]n individual has no standing [under the Privacy Act] to challenge agency action with regard to records pertaining to a business, including a sole proprietorship").  Rather, as the defendants go on to make clear, the gravamen of their argument is not that the plaintiffs lack standing to bring their Privacy Act claims, but that "a 'record,' as defined in the Privacy Act, contains only information about a citizen of the United States or an alien lawfully admitted for permanent residence[,] . . . [and] not . . . information about businesses."  Id. at 14.

13

In addition to their motion to dismiss, and despite the fact that no discovery has yet been conducted, see Pls.' Mot. ¶ 6 (noting that discovery "has yet to commence in this case"), the defendants also move for a grant of partial summary judgment pursuant to Rule 56(c).[26] Defs.' Mot. at 1. In response, the plaintiffs request permission to conduct discovery under Rule 56(f), arguing that they have not had an adequate opportunity to develop the factual record and to produce affidavits and other opposing material to challenge the defendants' summary judgment motion. See Pls.' Mot. at 1-2 (stating that the plaintiffs' opposition to the defendants motion to dismiss or for partial summary judgment "shows many instances . . . where facts alleged by [the] [d]efendants . . . are exclusively within the control of [the] [d]efendants and have not yet been challenged or tested in discovery"); see also id., Ex. 1 (Affidavit of Laurence Schor) ("Schor Aff.") ¶ 7 (contending that "discovery is likely to reveal triable issues of fact or even allow [the] [p]laintiffs to pursue their own summary judgment"); id., Ex. 2 (Affidavit of Geoffrey T. Keating) ("Keating Aff.") ¶ 5 (stating that "[the] [p]laintiffs have had no opportunity for discovery . . . [and are therefore] unable to furnish material that challenge[s] or undermine[s] [the] [d]efendants' [d]eclarants"). The plaintiffs' discovery motion, which incorporates by reference their opposition to the defendants' motion for partial summary judgment and their

---

[26] Specifically, the defendants argue that (1) the SBA is entitled to summary judgment on Counts XIII-XVI of the complaint because the CAN was not part of an SBA system of records, Defs.' Mem. at 23; (2) the defendants are entitled to summary judgment on Counts V, VI, and XIII because the disclosures alleged therein fall within the "need to know" exception of the Privacy Act, id. at 28-29; (3) the defendants are entitled to summary judgment on Counts V, VI, XI, and XII because the disclosure of the CAN was made pursuant to a published routine use, id. at 29-31; (4) the Army is entitled to summary judgment on Counts VIII and IX because it has adhered to clearly established standards and safeguards regarding the maintenance, confidentiality, and security of systems of records, id. at 32-33; (5) the SBA is entitled to summary judgment on Counts XIV-XVI because it has complied fully with the requirements of 5 U.S.C. § 552a(e), id. at 33-38; and (6) all defendants are entitled to summary judgment on all counts because their actions in making the alleged disclosures were not intentional and willful as required by the Privacy Act, id. at 38-41. The plaintiffs oppose the defendants' motion for partial summary judgment in all respects. See generally Pls.' Opp.

response to the defendants' statement of undisputed material facts, Pls.' Mot. at 2 n.3, identifies

numerous "specific areas of disputed fact requiring discovery," Schor Aff. ¶ 7; Keating Aff. ¶ 7.

In addition, the plaintiffs have submitted affidavits that further set forth the reasons they are

unable at this time to "present by affidavit facts essential to justify [their] opposition." Fed. R.

Civ. P. 56(f); see generally Schor Aff.; Keating Aff. The defendants have not responded to the

plaintiffs' Rule 56(f) motion.

## II. Standards of Review

### A. Motions to Dismiss Under Rule 12(b)(6)

When evaluating a motion to dismiss for failure to state a claim upon which relief can be

granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must treat the

complaint's factual allegations as true and must grant [the] plaintiff[s] the benefit of all

reasonable inferences [that can be derived] from the facts alleged." Trudeau v. FTC, 456 F.3d

178, 193 (D.C. Cir. 2006) (internal quotation marks and citations omitted). However, the Court

"need not . . . accept inferences that are unsupported by the facts set forth in the complaint . . .

[or] legal conclusions cast in the form of factual allegations." Islamic Am. Relief Agency v.

Gonzales, 477 F.3d 728, 732 (D.C. Cir. 2007) (citations omitted). The Court may only consider

the facts alleged in the complaint, any documents attached to the complaint as exhibits, and

matters about which the Court may take judicial notice in addressing a Rule 12(b)(6) motion.

EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 (D.C. Cir. 1997). A complaint

may be dismissed under Rule 12(b)(6) "only if it is clear that no relief could be granted under any

set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema, 534

U.S. 506, 514 (2002); see also Abigail Alliance For Better Access to Developmental Drugs v.

Von Eschenbach, 445 F.3d 470, 475 (D.C. Cir. 2006) (holding that "[a] court should not dismiss

a complaint pursuant to Rule 12(b)(6) for failure to state a claim 'unless it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief'") (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

### B.  Motions for Summary Judgment Under Rule 56

Courts will grant a motion for summary judgment pursuant to Rule 56(c) "after adequate

time for discovery . . . against a party who fails to make a showing sufficient to establish . . . an

element essential to that party's case, . . . on which that party will bear the burden of proof at

trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citation omitted); see also Fed. R.

Civ. P. 56(c) (stating that summary judgment is appropriate if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law").  When ruling on a Rule 56(c) motion, the Court must view the

evidence in the light most favorable to the non-moving party.  Holcomb v. Powell, 433 F.3d 889,

895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).

The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and

accept the non-moving party's evidence as true.  Anderson v. Liberty Lobby, 477 U.S. 242, 255

(1986).  The non-moving party, however, cannot rely on "mere allegations or denials."  Burke v.

Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248) (quotation

marks omitted), and "conclusory allegations unsupported by factual data will not create a triable

issue of fact," Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999)

(internal quotation marks and citations omitted).  Rather, the non-moving party must go beyond

16

"the pleadings and by [his] own affidavits, or . . . depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotation marks and citation omitted).

Courts may "deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion." Strang v. U.S. Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989) (citations omitted); see also Banks v. Veneman, 402 F. Supp. 2d 43, 48 (D.D.C. 2005) (observing that "[d]enial of a summary judgment motion under Rule 56(f) is appropriate when the record is undeveloped on elements of [the] plaintiff's claim") (citation omitted). Such an explanation must be made by affidavit, Fed. R. Civ. P. 56(f), and must "be made on personal knowledge, . . . set[ting] forth such facts as would be admissible in evidence, and . . . show[ing] affirmatively that the affiant is competent to testify to the matters stated therein," Fed. R. Civ. P. 56(e). "The party seeking discovery [under Rule 56(f)] bears the burden of identifying the facts to be discovered that would create a triable issue and why the party cannot produce those facts in opposition to the motion." Banks, 402 F. Supp. 2d at 47 (citing Byrd v. EPA, 174 F.3d 239, 248 n.8 (D.C. Cir. 1999), cert. denied, 529 U.S. 1018 (2000)) (emphasis added). "The party must also demonstrate a reasonable basis to suggest that discovery might reveal triable issues of fact." Id. (citing Carpenter v. Nat'l Mortgage Ass'n, 174 F.3d 231, 237 (D.C. Cir. 1999), cert. denied, 528 U.S. 876 (1999)).

### III. Analysis

**A. The Defendants' Motion to Dismiss**

17

The defendants argue, inter alia, that neither the CAN nor the letters to First Bank or the plaintiffs' attorneys contain information about the plaintiffs sufficient to make those documents "records" within the meaning of the Privacy Act. Defs.' Mem. at 13-19, 24-27; see also 5 U.S.C. § 552a(a)(4) (defining "records"). Specifically, the defendants argue that (1) the plaintiffs' claims regarding the CAN are "premised on the alleged disclosure of entrepreneurial information, rather than personal information," id. at 13-14; (2) the plaintiffs "have not identified the Privacy Act protected information allegedly disclosed [in the letter to First Bank]," id. at 24; and (3) "the information revealed in the two letters to counsel about the client of the other counsel . . . was available to the public," id. at 26, and thus does not constitute Privacy Act protected information. For the reasons stated below, the Court concludes that it is clear from the plaintiffs' allegations that the CAN and the letters to First Bank and to the plaintiffs' attorneys are "records" under the definition of § 552a(a)(4), and that the disclosure of the information contained therein is actionable under the Privacy Act. The Court must therefore deny the defendants' motion to dismiss.

"In order to protect the privacy of individuals identified in information systems maintained by federal agencies, the Privacy Act regulates the collection, maintenance, use, and dissemination of information by such agencies." Maydak v. United States, 363 F.3d 512, 515 (D.C. Cir. 2004) (internal quotation marks and citation omitted); see also McCready v. Nicholson, 465 F.3d 1, 7-8 (D.C. Cir. 2006) (stating that "the [Privacy Act] safeguards the public from unwarranted . . . use and dissemination of personal information contained in agency records") (internal quotation marks and citation omitted). Thus, with certain limited exceptions, the Privacy Act forbids federal agencies from "disclos[ing] any record which is contained in a

18

system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). The Privacy Act defines "individual" as "a citizen of the United States or alien lawfully admitted for permanent residence." Id. § 552a(a)(2). Furthermore, it defines "record" as "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains [the individual's] name or . . . other identifying particular assigned to the individual."[27] Id. § 552a(a)(4) (emphasis added).

For the purposes of the Privacy Act's definition of "record," the defendants ask this Court to accept a distinction between "personal information" (information about an individual acting in a personal capacity) and "entrepreneurial information" (information about an individual acting in an entrepreneurial capacity, including actions taken on behalf of a sole proprietorship), and argue that only disclosure of information falling in the former category is intended to be protected by the Privacy Act. Defs.' Mem. at 13-19. This distinction is found nowhere within the text of the statute itself.[28] See 5 U.S.C. § 552a(a). Rather, "[t]he Act defines 'record' in relatively broad

---

[27] The Act defines "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some . . . identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).

[28] In support of their proposed distinction between personal information and entrepreneurial information, the defendants point to regulatory guidance documents issued by the Office of Management and Budget ("OMB"), the SBA, the Army, and the DOD, all of which purport to interpret the contours of the Privacy Act as applied by these agencies. Defs.' Mem. at 13-14 (OMB), 15 (SBA), 18-19 (Army and DOD). The defendants' arguments regarding these regulations are unpersuasive for several reasons.

First, the SBA and DOD regulations cited by the defendants simply repeat the Privacy Act's definition of "individual"—that is, the class of people at whom the Act is directed and for whom a violation of the Act is actionable—as encompassing only United States citizens and lawfully admitted aliens, and, in the case of the SBA

(continued...)

fashion." <u>McCready</u>, 465 F.3d at 9 (citing 5 U.S.C. § 552a(a)(4)).  "[I]n order to qualify as a

record, information must be 'about' an individual[,] . . . [and it] must contain the individual's

name or other identifying particular."  <u>Tobey v. NLRB</u>, 40 F.3d 469, 471 (D.C. Cir. 1994); <u>see</u>

<u>also</u> 5 U.S.C. § 552a(a)(4).  Beyond these twin requirements, the plain language of the Act

contains no further qualifications or limitations.  <u>See</u> 5 U.S.C. § 552a(a); <u>see also</u> <u>Pilon v. Dep't</u>

---

<sup>28</sup>(...continued)
regulations, state that individuals may sue under the Act only when information "pertaining to [them]" is at issue.  13 C.F.R. § 102.20 (2007); Defs.' Mot., Ex. 7 (SBA Privacy Act Procedures, SOP 40.04.03) (June 23, 2004) at 7 ("SBA Privacy Act Procedures"); <u>see also</u> Department of Defense Directive No. 5400.11 (November 16, 2004) at 8, <u>available at</u> http://www.dtic.mil/whs/directives/corres/pdf/540011p.pdf (last accessed May 3, 2007) ("DOD Directive"); Defs.' Mem. at 15, 18-19.  Although these regulations are couched in minutely different terms than the Privacy Act, they are plainly no more restrictive than the plain language of the Act itself.  <u>See</u> 5 U.S.C. §§ 552a(a)(2) (defining "individual"), 552a(b) (forbidding agencies from "disclos[ing] any record [except with the consent of] the individual to whom the record pertains").  The SBA Privacy Act Procedures also state that "[r]ecords of companies, corporations, partnerships, and sole proprietorships" are not subject to Privacy Act protection.  SBA Privacy Act Procedures at 10; <u>see also</u> Defs.' Mem. at 15.  Here, however, the document allegedly disclosed by the SBA is not a business record, but rather a CAN which provides details regarding the individual plaintiffs and their businesses in the context of an investigation into the plaintiffs' possible surety fraud.  <u>See generally</u> Criminal Alert Notice.

In addition, both the DOD and Army regulations define "personal information" for the purposes of the Privacy Act as "[i]nformation about an individual that identifies, relates, or is unique to, or describes him or her, <u>e.g.</u>, a social security number, age, military rank, civilian grade, marital status, race, salary, <u>home/office phone numbers</u>, etc."  DOD Directive at 8 (emphasis added); 32 C.F.R. § 505, App. H (2007) (Definitions, Army Privacy Act Program) (emphasis added).  This definition is clearly consistent with both the language of the Privacy Act, <u>see</u> 5 U.S.C. § 552a(a)(4) (stating that information "about" an individual "includ[es], but [is] not limited to, [an individual's] education, financial transactions, medical history, and criminal or employment history"), and the type of information allegedly disclosed by the DOD and the Army in this case.

Finally, it is true that the OMB Privacy Act Guidelines distinguish between personal information and entrepreneurial information and "suggest[] that . . . [the protections of the Privacy Act were] intended to embrace only the former."  OMB Circular A-108, 40 Fed. Reg. 28,948, 28,951 (July 9, 1975) ("OMB Guidelines"), <u>reprinted in</u> LEGISLATIVE HISTORY OF THE PRIVACY ACT OF 1974: SOURCE BOOK ON PRIVACY at 1023-24 (1976) ("Source Book") (also advising that agencies (1) "examine the content of the records in question to determine whether the information being maintained is . . . personal in nature"; and (2) evaluate whether "the subject of an agency file is . . . dealt with in a personal or entrepreneurial role").  However, to the extent that the OMB Guidelines (or any of the other regulations cited by the defendants) contradict the plain language of the Privacy Act itself, they should be accorded no special interpretative weight.  <u>See</u> Chevron USA, Inc. v. Nat'l Res. Def. Council, 467 U.S. 837, 842 (holding that "[i]f the intent of Congress is clear, that is the end of the matter; for the [C]ourt, as well as the agency, must give effect to the unambiguously expressed intent of Congress") (footnote omitted); <u>see also</u> Henke v. Dep't of Commerce, 83 F.3d 1453, 1461 n.12 (D.C. Cir. 1996) (holding that the OMB Guidelines "are owed the deference usually accorded interpretation of a statute by the agency charged with its administration") (internal quotation marks and citation omitted).  As discussed below, the Court concludes that the Act's definition of information that is "about" an individual is clearly drawn in broad and expansive terms, <u>see</u> 5 U.S.C. § 552a(a)(4), and makes no provision for the exclusion of records from the protections of the Privacy Act simply because the information contained therein pertains to an individual in the context of his or her business activities.  <u>See infra</u> at 21-23.

of Justice, 73 F.3d 1111, 1119 (D.C. Cir. 1996) (reiterating "the fundamental canon that statutory interpretation begins with the language of the statute itself") (internal quotation marks and citation omitted); Tobey, 40 F.3d at 471 (stating that an inquiry into the Privacy Act "begins, as it should, with an analysis of the Act's language").

Here, it is clear that the CAN, the letter to First Bank, and the letters to the plaintiffs' attorneys each contain the names of at least one plaintiff. See Criminal Alert Notice at 1-2 (naming plaintiffs Wright, Gowen, and Scarborough); Keating Letter at 1-2 (naming plaintiffs Wright and Scarborough); Schor Letter at 1-2 (naming plaintiffs Wright and Scarborough); First Bank Letter at 2 (naming plaintiffs Wright, Gowen, and Scarborough). Thus, in evaluating the defendants' argument that these documents are not "records" for the purposes of the Privacy Act, see Defs.' Mem. at 13-19, the Court's sole inquiry must be whether the documents, and the information contained therein, are "about" the plaintiffs within the meaning of § 552a(a)(4). The Court concludes that they are.

The District of Columbia Circuit has stated that, under the Privacy Act, an item is "about an individual" if it "contain[s] information that actually describes the person in some way." McCready, 465 F.3d at 9 (internal quotation marks and citation omitted). Such information "includ[es], but [is] not limited to, [an individual's] education, financial transactions, medical history, and criminal or employment history." 5 U.S.C. § 552a(a)(4); see also id. (defining "record," in relevant part, as "any item, collection, or grouping of information about an individual") (emphasis added). By its own plain terms, this definition is undeniably expansive, and there is nothing in the statute to indicate an intent to exclude certain classes of information, as long as they "actually describe [an individual] in some way," McCready, 465 F.3d at 9

21

(internal quotation marks and citation omitted), simply because they do so in relation to the

individual's business dealings or entrepreneurial activities, rather than his or her personal life.

See generally 5 U.S.C. § 552a; see also Tobey, 40 F.3d at 472 (rejecting as "too narrow" the

proposition, adopted in other Circuits, that the Privacy Act "requires that information in the

records reflect some quality or characteristic of the individual involved") (internal quotation

marks and citation omitted); cf. Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, ___ U.S.

____, ____, 126 S. Ct. 2455, 2459 (2006) (reiterating that "courts must presume that a legislature

says in a statute what it means and means in a statute what it says there") (internal quotation

marks and citation omitted).  The CAN [SEVEN LINES REDACTED].  Criminal Alert Notice at

3; see id. at 1-3.  The letter to First Bank expressly states that [TWO LINES REDACTED], First

Bank Letter at 2, and asks the bank to [TWO LINES REDACTED], id. at 1.   It also includes

copies of two communications signed by plaintiff Gowen in his capacity as trustee officer for

FMB.  Id. at 3-4.  The letter to plaintiff Wright's attorney states that plaintiff Scarborough [ONE

LINE REDACTED], Keating Letter at 1, and the letter to Scarborough's attorney states that

Wright [ONE LINE REDACTED], Schor Letter at 2.[29]  In sum, each of these documents

---

[29] The defendants argue that "[n]one of the information revealed in the two letters to counsel about the client of the other counsel[] was Privacy Act protected information[,] . . . [because] [i]t was information that was available to the public." Defs.' Mem. at 26; see also Defs.' Reply at 8 (contending that "there is no right to [p]rivacy in one's criminal record . . . [because] [c]riminal records are public matters") (citation omitted).  However, not only does the plain language of the Privacy Act belie the defendants' proposition, see 5 U.S.C. § 552a(a)(4) (stating that the information protected by the Privacy Act "includ[es], but [is] not limited to, [an individual's] . . . criminal . . . history"), but the District of Columbia Circuit has expressly declined to adopt the proposition "that when a release consists merely of information to which the general public already has access . . . the Privacy Act is not violated," Pilon, 73 F.3d at 1118 (internal quotation marks and citation omitted); cf. id. at 1121 (stating that a review of the legislative history of the Privacy Act "reveal[ed] not even a single tangential reference by any member of Congress, much less a clear statement in a congressional report, to the effect that the Act was not meant to bar the unauthorized release of documents to persons already familiar with their contents").  Moreover, the Supreme Court has held, in the specific context of criminal records, that the disclosure of an individual's "rap sheet"—a document listing "certain descriptive information . . . as well as a history of [the individual's] arrests, charges, convictions, and

(continued...)

references the plaintiffs by name and divulges "information that actually describes the [plaintiffs] in some way," McCready, 465 F.3d at 9 (internal quotation marks and citation omitted), thus meeting the requirements of § 552a. See 5 U.S.C. § 552a(a)(4); see also Tobey, 40 F.3d at 471. The Court thus holds that documents identifying the individual plaintiffs by name and describing the plaintiffs' involvement in allegedly criminal or otherwise unsavory activity are "about" the individual plaintiffs, and therefore not excluded from the Privacy Act's definition of "records," even if this activity was allegedly undertaken through, or in connection with, the plaintiffs' businesses. Accordingly, the defendants' motion to dismiss is denied.

## B. The Defendants' Motion for Summary Judgment

In their unopposed motion pursuant to Rule 56(f), the plaintiffs argue that resolution of the defendants' motion for partial summary judgment should be deferred until they have had an opportunity to more fully develop the factual record through the discovery process. Pls.' Mot. at 1-3; see also Schor Aff. ¶ 7 (contending that "discovery is likely to reveal triable issues of fact or even allow [the] [p]laintiffs to pursue their own summary judgment"); Keating Aff. ¶ 5 (stating

---

[29](...continued)

incarcerations"—"could reasonably be expected to constitute an unwarranted invasion of personal privacy within the meaning of the Freedom of Information Act," the Privacy Act's sister statute. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 751 (1989); see also id. at 753 (stating that "[a]lthough much rap sheet information is a matter of public record, the availability and dissemination of the actual rap sheet to the public is limited"). There, the Supreme Court rejected the argument "that an individual's privacy interest in criminal history information that is a matter of public record [is] minimal at best," id. at 759, characterizing it as a "cramped notion of personal privacy," id. at 763; see id. at 770 (stating that "the fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information") (internal quotation marks and citation omitted); cf. Gowan v. Dep't of Air Force, 148 F.3d 1182, 1193 (10th Cir. 1998) (holding that "an agency may not defend a release of Privacy Act information simply by stating that the information is a matter of public record"); Quinn v. Stone, 978 F.2d 126, 134 (3d Cir. 1992) (observing that the Court could find "no case that stands for the proposition that there is no violation of the [Privacy] Act if the information is merely readily accessible to the members of the public"). In accordance with these decisions and with the unqualified language of the Privacy Act itself, the Court concludes that "[t]o define disclosure so narrowly as to exclude information that is readily accessible to the public would render superfluous the detailed statutory scheme of twelve exceptions to the prohibition on disclosure" set forth in the Privacy Act. Quinn, 978 F.2d at 134 (footnote omitted). The Court therefore denies the defendants' motion to dismiss the plaintiffs' claims on this ground.

23

that "[the] [p]laintiffs have had no opportunity for discovery . . . [and are therefore] unable to furnish material that challenge[s] or undermine[s] [the] [d]efendants' [d]eclarants"); Pls.' Opp. at 14 (asserting that "it is difficult, if not impossible, for [the] [p]laintiffs to ascertain all of the facts about disclosures/Privacy Act violations without discovery, since the information is almost exclusively in control of [the] [d]efendants"). The plaintiffs support their request for discovery by identifying numerous "specific areas of disputed fact requiring discovery," Schor Aff. ¶ 7; Keating Aff. ¶ 7, both in accompanying affidavits, Schor Aff. ¶¶ 7-8; Keating Aff. ¶¶ 7-8, and in their responses to the defendants' motion for partial summary judgment and the defendants' statement of undisputed material facts, Pls.' Resp. at 2-10, 12-14; Pls.' Opp. at 12-14, 16, 29-55, which have been incorporated by reference into the plaintiffs' Rule 56(f) motion, Pls.' Mot. at 2 n.3. After reviewing all of the material submitted by the plaintiffs, the Court agrees that the defendants' arguments regarding the appropriateness of summary judgment are grounded in factual allegations concerning matters about which the plaintiffs would surely benefit from at least <u>some</u> discovery.

"Summary judgment is premised on the notion that parties will have had 'adequate time for discovery' to establish whether a genuine issue of material fact exists." <u>Breen v. Peters</u>, 474 F. Supp. 2d 1, 7 (D.D.C. 2007) (quoting <u>Celotex</u>, 477 U.S. at 322). A grant of summary judgment is therefore appropriate only if both parties "[have] had a full opportunity to conduct discovery," <u>Anderson</u>, 477 U.S. at 257, and "it is . . . the general rule that decision by summary judgment is disfavored when additional development of facts might illuminate the issues of law requiring decision," <u>Barnes v. District of Columbia</u>, ___ F. Supp. 2d. ____, ____, 2007 WL 896282, at *3 (D.D.C. Mar. 26, 2007) (citing <u>Nixon v. Freeman</u>, 670 F.2d 346, 362 (D.C. Cir.

1982)).  Thus, the District of Columbia Circuit "has long recognized that a party opposing summary judgment needs a reasonable opportunity to complete discovery before responding to a summary judgment motion and that insufficient time or opportunity to engage in discovery is cause to defer decision on the motion."  Khan v. Parsons Global Servs., Ltd., 428 F.3d 1079, 1087 (D.C. Cir. 2005) (internal quotation marks and citation omitted) (emphasis added) (reversing district court's grant of summary judgment where defendant filed summary judgment motion before any discovery had taken place); see also McCready, 465 F.3d at 19 (finding that Privacy Act plaintiff "should be afforded a reasonable opportunity to complete discovery before responding to the [g]overnment's summary judgment motion") (internal quotation marks and citation omitted).

Here, the parties have not engaged in any discovery whatsoever, and the plaintiffs' submissions amply detail the need for some development of the factual record.  See Pls.' Mot. at 1-3; Schor Aff. ¶¶ 7-8; Keating Aff. ¶¶ 7-8; Pls.' Resp. at 2-10, 12-14; Pls.' Opp. at 12-14, 16, 29-55.  Indeed, it is clear that "[n]early every issue in this case would benefit from illumination via the discovery process."  Barnes, ___ F. Supp. 2d at ____, 2007 WL 896282, at *3. Otherwise, as in Khan and McCready, the plaintiffs would be "forced to operate in the dark, with no discovery," in opposing the defendant's motion for summary judgment.  Khan, 428 F.3d at 1087 (internal quotation marks and citation omitted).  Accordingly, the Court will deny without prejudice the defendants' motion for partial summary judgment and grant the plaintiffs' Rule 56(f) motion for discovery.

## IV. Conclusion

For the reasons set forth above, the Court concludes that the CAN and the letters to First Bank and to the plaintiffs' attorneys are "records" within the meaning of § 552a(a)(4) and that the disclosure of the information contained therein is actionable under the Privacy Act. Moreover, the defendants' motion for partial summary judgment is premature, as the plaintiffs have had "insufficient time or opportunity to engage in discovery." Khan, 428 F.3d at 1087 (internal quotation marks and citation omitted). This is not to say, of course, that the defendants actually violated the Privacy Act by disseminating the documents at issue, or that one of the Act's twelve exceptions to the general prohibition on the disclosure of "personal information contained in agency records" does not apply to all or part of the plaintiffs' claims in this case. McCready, 465 F.3d at 8 (internal quotation marks and citation omitted). The Court simply concludes that the plaintiffs have stated a viable legal claim and that factual discovery is warranted before the merits of the plaintiffs' Privacy Act claims can be evaluated. Accordingly, the Court denies the defendants' motion to dismiss, denies without prejudice the defendants' motion for partial summary judgment, and grants the plaintiffs' motion for discovery.

**SO ORDERED** this 22nd day of May, 2007.[30]

REGGIE B. WALTON
United States District Judge

---

[30] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.